2-0-1-7-4-8 from the District of North Dakota, Nuevos Destinos, et al. v. Samuel Peck, et al. All right, Mr. Cook, we'll hear from you first. Thank you, your honors, and thank you for the opportunity to present the appellant's case today. The plaintiffs have been waiting more than five years to have this, their first substantive hearing in this case, and so this opportunity to address the court is much appreciated. During most of the first three and a half years of this existence, this case was inexplicably stayed by Judge Emmett Sullivan of the District Court in D.C. During that time, the plaintiff's various attempts to get the case moving were completely unsupported by the defendants, in particular, Appellee S.K.E., which actually filed an opposition to lift the stay. This is the same S.K.E. that is now claiming extending this case further will be unfair and prejudicial to it because of the passage of time. Appellee Peck was no better, and while not objecting to lifting the stay, he never supported it either. Any suggestion that the appellants had any real opportunity to file a motion to amend or any other motion during the appellee's complicity in affecting the inability of the appellants to file anything. In the short tendency of this case in North Dakota, the plaintiffs sought a single opportunity to amend their complaint. Plaintiffs had previous, which was denied. Plaintiffs had previously sought jurisdictional discovery, which was also denied, and they sought an opportunity to be heard on the merits, which was also denied. Plaintiffs now seek this court's permission to amend their complaint pursuant to 28 U.S.C. 1653 to delete the RICO claims and amend their state law claims to base them on diversity of citizenship under 28 U.S.C. 1332A subsection 3. The original state law claims in the complaint were pleaded under the D.C. court supplemental jurisdiction pursuant to 28 U.S.C. 1367. The standard for review by this court for denial of a motion to amend a complaint is abuse of discretion. However, when the district court faces its denial on the futility of the proposed amendments, as did the court below, the appellate court reviews the underlying legal conclusions de novo. It's also well established by this court that where a district court does not have jurisdiction under another federal claim was pleaded, even though not artfully, the court of appeals or the district court on remand has the power to permit amendment to avoid dismissal under purely jurisdictional grounds. This court has held that the court of appeals may treat the complaint as amended to properly allege diversity of citizenship and address merits of appeal if the record established that diversity actually existed in the district court. Furthermore, the court of appeals may allow the party asserting that subject matter jurisdiction exists to amend its complaint on appeal to properly allege diversity of citizenship. Counsel, is there a case, let me interrupt you to say, is there a case like ours where you didn't move to amend the district court on this basis, you didn't ever plead diversity in district court. Is there a case with facts like this that double down on it, I'd call it? I would say in our brief, we've cited a variety of cases that stand for that proposition, including national. Go slowly with me because most of the cases you cite and all the ones that we can find are where typically the plaintiff says residence or some such word and not citizenship and it's not one where there's a motion to amend on one basis and then an appeal we bring this up about diversity. So surely there's not a case like this, is there? To be honest, your honor, I would have to agree with you. Likewise, as we'll discuss later, the issue of 1332A3, also this court has not ruled on. And so there are a lot of novel issues in the case for the court to discuss and consider. Mr. Cook, I think at the risk of repeating, you did not raise this particular grounds to the district court in a motion to amend, correct? We did not, your honor. So this is brand new on appeal. How are we supposed to approach that? What standard are we applying now? Well, again, a circuit case law allows for a party asserting that subject matter jurisdiction existed below to amend its complaint on appeal to properly allege diversity of citizenship within 30 days to plead jurisdiction. And in such event, the case would be decided on the merits without further argument. But you're seeking an amendment, correct? You're seeking to amend your complaint. And you're asking that of the court of appeals, correct? Correct. So how do we assess whether or not we, I think the statute says may allow it. How do we assess this request? I think, again, if you take the context of the totality of the case and the fact that it was stayed in the parties, the plaintiffs had no opportunity for three and a half years to do anything in the case except brief an obisco case. And even that was very limited. They had no opportunity to take this action before. And again, the case history in the Eighth Circuit is for the court of appeals to sit de novo and have an opportunity to provide relief so a case is not dismissed purely on jurisdictional grounds, which is the case here. Finally, when the complaint sufficiently alleges that parties resided in different states and the jurisdictional amount was in controversy, but the complaint was insufficient with respect to its averment of diversity purposes of federal jurisdiction, this court has held that the plaintiff should not be held liable for the fact that the parties resided in their complaint to show that, in fact, diversity of jurisdiction did exist and that they be permitted to remedy that defect. And I'd like to reserve the balance of my time for rebuttal because the other parties raised eight different issues, which I'm sure they intend to talk about, and I want to have sufficient time to respond with the court's permission. Okay. Well, they're not the appellants, so we want to make sure you've set forth all the reasons why you think we should reverse. Well, I think the points that they've raised in their opposition are a variety of cases that they've either truncated and only cited two portions of the case without citing the balance, particularly on section 1332. Don't misunderstand me. You're welcome to respond to whatever they say. I just don't want you to bring up new reasons for reversal in your lengthy rebuttal. That wouldn't be the proper use of rebuttal. So if you've laid out the reasons you want to state for reversal and want to just reserve the balance to respond to their arguments, you may. I'd like to discuss also the court balloon's decision in two respects. First, in the order, the court said that any amendment would be futile, and I think that goes beyond the scope of what the Eighth Circuit has laid out as to be the standard, which would be that the proposed amendment would be futile. And the fact that the court indicated that any amendment would be futile evinced an intent on the part of the court to dispose of this case regardless. Further in that regard, the court ruled dismissal against the appellees was with prejudice, and we cite in our reply the analysis relating to the Smith case and why we did not require dismissal with prejudice. Further, the plaintiffs did not engage in any of the conduct that the court laid out that would justify an initial ruling of a dismissal with prejudice. And we think on those grounds alone, that would support reversal and an opportunity for us to the appellees are cases in which the plaintiffs had numerous opportunities to amend the complaint below and fell short. We never had any opportunity to amend the case below, and that's what we're asking for now. So I'll reserve the balance of my time. Very well. Thank you for your argument. My notes here show that Mr. Magid is to speak first. Is that right? That's right, Judge Collins. All right, very well. You may proceed. Thank you, and may it please the court. The facts of this case are rather unusual. A dispute over grade sales between Peruvian entities that somehow ended up in American courts. What is important here is that the plaintiffs seeking jurisdiction over those Peruvian entities made a strategic and tactical decision to assert federal question jurisdiction and to make this RICO case and brought it in the district court for the District of Columbia. The defendants in that case, which includes the appellees, moved to dismiss on, among other things, jurisdictional grounds. So from the very start, jurisdiction was an issue. Judge Sullivan dismissed the case and then, giving the appellant a second life, agreed with the appellant to vacate that dismissal order and send the case to the District of North Dakota. Judge Welty, again, on full briefing, again, in a well-reasoned opinion, held that the RICO claims were not well-founded, that there was not jurisdiction, and dismissed the case against the Peruvian defendants and the RICO claims against all defendants and declined to exercise supplemental jurisdiction over the remaining case. The important thing is that jurisdiction was an issue in both the District of Columbia and in the District of North Dakota. At no time did the appellant seek to amend or seek to assert any other jurisdiction other than federal question jurisdiction. The appellant seems to believe that because there was no oral argument, that it somehow was denied an opportunity to seek leave to amend. But that, of course, is not the rule. At no point, despite the attack on jurisdiction in two separate cases in the District of Columbia and North Dakota, did the appellant say anything about diversity jurisdiction. After the case was dismissed for the second time by Judge Welty, the appellant sought leave to amend. But even in that motion for amendment, there was nothing about jurisdiction. It was merely to add additional facts pertaining to a claim that the appellant has now abandoned. So at this stage, the appellant is essentially throwing itself on the court and saying, look, we've decided we want to change the entire nature of the case. We pleaded this is a RICO case. We did that because we wanted to exert jurisdiction over Peruvian entities. That didn't work once. It didn't work twice. And now what we're going to try to do is to reconfigure this case, dismiss the RICO claims, get rid of all the Peruvian defendants, and try this as a state law case and assert that the court somehow abused its discretion in declining to exercise supplemental jurisdiction. And it didn't. The cases that the appellant cites for support of its argument that for the first time on appeal, that it can invoke Section 1653 to amend its complaint fall short. And I believe that your honors have already, through questioning, addressed some of these. First, these cases typically involve misstatements of jurisdiction. For example, a case that refers to residency rather than citizenship, or says we bring this case under the Constitution in a specific Supreme Court case, and doesn't allege the particular article or amendment of the Constitution at issue. And the courts there said, look, that's a technical error. We're willing to allow correction of that. In the other cases in which amendment has been allowed, jurisdiction was never an issue below. It first surfaced in the Court of Appeals. And that's an important distinction. Although this circuit has not directly addressed the question, several cases from other circuits, I think, really point the way here. And I'll start with the Danvishar opinion from the Tenth Circuit, which was cited in the appellant's opening brief. The Danvishar case, which also cites two other cases that come out the same way, the Seventh Circuit's case in Sarnoff and the First Circuit's case in Mills, makes it very clear that 1653, quote, presupposes that the parties not suspecting a jurisdictional difficulty had no reasonable opportunity to cure it before the appeal. And that's precisely, unquote, that's precisely the issue here. There were ample opportunities if the plaintiff felt that, or if the appellant felt that it wished to amend its complaint so that it could assert a different jurisdictional ground. It could have done that, and it failed to do so. Mr. Maggott, let's assume that there wasn't that opportunity. I understand your position in the course of this particular case. Is it your position that the plaintiff would have had to have cited two diversity jurisdictions in the complaint, or is that an oversight as well that could be, I'll use the word, cured under this particular provision on appeal? Well, Judge Kelley, if I understand the question correctly, and please clarify if I'm wrong here, but if we were to assume that jurisdiction had not been an issue in either of the courts below and suddenly been raised sua sponte by this court, for example, then the question would be, would it be necessary to use the specific terms, diversity jurisdiction? In candor, I don't think it would. The court would, in that situation, be able to say, well, we're going to look at the facts, and this is also important, is that the court could then look at the facts as pleaded and says, from those facts, is there a sufficient basis for diversity jurisdiction? The key, though, is that the plaintiff here has admitted that the facts don't exist on the face of the complaint. If you look at page 20 of the appellant's opening brief, including the subheading for section C, there's an acknowledgment, and I'll quote it, where the record on appeal failed to demonstrate that district court had jurisdiction in a case, the plaintiff should be given time in which to amend pleadings to show jurisdiction. It's an acknowledgment that there is nothing in the complaint that would allow this court to find a basis for diversity jurisdiction. Among other reasons, one of the plaintiffs, NDL, is a limited liability company. It merely says that it's registered in Florida, but, of course, a limited liability company has citizenship where its members reside. There's nothing in the complaint that says how many members it has. It says that two of its members, two of its managing members, are Mr. Cook and his wife. It doesn't say how many other members it is. There are similarly no jurisdictional allocations regarding several of the defendants who are alleged to be residents of the United States or companies registered in the United States. You'll find all those in paragraphs 9, 10, 11, 18, and 19 of the complaint. So even if this court were to overlook the first problem, which is the plaintiff or the appellant had ample opportunity to seek leave to amend or to assert a different jurisdictional basis in the court below, and it didn't avail itself of that, even if that had never arisen, the court can't simply allow the plaintiff on appeal to go in and add new facts to assert jurisdiction. The cases are equally clear, and the Newman-Green case, for example, from the Supreme Court makes it clear that you can clean up jurisdictional allegations, but you can't add new jurisdictional facts. One of the interesting cases on this point, Your Honors, was cited in reply by the appellant, and that's the Geno source case by Judge Williams in the Northern District of Iowa. And although that case, of course, is not binding on this court, I think Judge Williams made a terrific observation, saying, quote, the danger against which a court must guard is that a party will attempt to use section 1653 to retroactively create subject matter jurisdiction. And that, Your Honors, is exactly what the appellant is trying to do here, is seeking leave to amend not only to change the entire jurisdictional basis of the case, the entire nature of the case, but asking the court for an opportunity to supplement the facts of the case to assert that jurisdiction. At this point, the plaintiff is the master of its pleading, and that is true of the appellant. And as the plaintiff has acknowledged, or the appellant has acknowledged, the facts simply don't exist on the face of the complaint for this court, even if this issue had arisen for the first time on appeal to find a basis for diversity jurisdiction. The more important thing is, despite the absence of oral argument, there was extensive briefing in two separate courts all about jurisdiction. This has been a live issue from the start, and at no time did the appellant seek to add any jurisdictional allegations, to change its jurisdictional basis from federal question. And for those reasons, the decision of Judge Welty should be affirmed. I'll now cede my time to Ms. LeGrand, if that's alright. Very well, thank you for your argument. Ms. LeGrand, we'll hear from you. You'll have to turn on your microphone for us to appreciate the argument better. Well, it remains to be seen whether that's true. Good morning, Your Honor, and may it please the Samuel Peck. Mr. Peck and Mr. Magid's client, S.K.E., are the last two of what were originally 21 defendants in this sprawling, originally RICO complaint brought by the plaintiffs, originally in D.C. I will not belabor the many points made very ably by Mr. Magid, but I just want to emphasize, for Mr. Peck, how many times we raised the issue that plaintiffs are trying to raise now earlier and heard no response from the plaintiffs. When Mr. Peck first moved to dismiss in the District of Columbia, Mr. Peck argued that the RICO claims should be dismissed for lack of jurisdiction in D.C. and failure to state a claim, and in the absence of the RICO claims, the court should decline to exercise supplemental jurisdiction. When we then moved to dismiss again in North Dakota, in the District of North Dakota, we again argued that the RICO claims should be dismissed for failure to state a claim. We also argued that the state law claims should be dismissed for failure to state a claim and argued explicitly that in any event, the state law claims should be dismissed as tag-along claims once the federal RICO claim was removed because the only basis alleged in the complaint for federal subject matter jurisdiction was federal question jurisdiction based on the RICO statute. So we argued that repeatedly in our motions to dismiss, in our replies, and the plaintiffs responded to our motions to dismiss and didn't address that at all. They never once said, if the RICO claim is dismissed, in the alternative, the court could consider diversity jurisdiction. They didn't even so much as mention it, nor did they attempt to amend. For instance, there are multiple opportunities as well where they could have attempted to just amend. For instance, when the case was first moved to North Dakota, there was a status conference. If plaintiffs at that point in time had said, hey, we've realized we want to amend, there's nothing that would have prevented them from asking that at that point in time before, again, before the parties went through another round of motion to dismiss briefing. But they didn't raise it then. They didn't raise it in response to our first motion to dismiss. We filed a second motion to dismiss. They didn't raise it then. Judge Welty then issued a 45-page decision where he carefully reviews the entire record of this case, and I feel for him, and goes through in great detail why the RICO claims can't be sustained against any of the defendants, and then declines to exercise supplemental jurisdiction over the remaining state law claims. Only then, after the dismissal by Judge Welty, did plaintiff first seek to amend. And as Mr. Magid pointed out, that motion to amend sought to amend on a totally different ground than we're at. Judge Welty found that that motion, that plaintiff's motion to amend, bordered on the frivolous, in part because no pleading was attached, and in part because it was untimely and prejudicial to the defendants. And I don't want to talk too much, so let me stop now, and if the court has any questions, I would be happy to answer them. I can talk more. Seeing none right away, you're welcome to continue if you wish, or you may close. I'd say in closing, it's time to bring this case to an end. The 28 U.S.C. 1653, which allows jurisdiction to be cured in some settings, is not designed for a case where plaintiff affirmatively chose not to make an argument earlier, and had repeated opportunities to do so, and then seeks to interject an entirely new theory of subject matter jurisdiction on appeal. Your Honors, I had asked Mr. Cook if he could cite courts where there were these opportunities to raise it, and it was not, and he didn't have any citations for that. So while the court is empowered in its discretion to correct technical jurisdictional errors on appeal, that's generally when the court's raising its sua sponte for the first time, and it is certainly not when plaintiff affirmatively chose not to make that argument earlier in response to specific arguments by the defendants, including Mr. Peck, that the case, that the state law claim should be dismissed for lack of subject matter jurisdiction, that 1653 does not save a case in this setting, given the facts and the five-year history of this case. Thank you. Very well. Thank you for your argument. Mr. Cook, we'll hear from you in rebuttal. And we'll all have to have the same microphone adjustment with you. I apologize. Thank you for the opportunity. Again, we would dispute the contention that we had unlimited opportunity to really do anything in this case. As far as the case needing to come to an end, we would argue it needs to come to a beginning. It's clear the court has the discretion. What was your lack of opportunity on the jurisdiction? Well, the case was stayed for three and a half years in D.C. We tried to get the stay lifted to move the case forward. It's kind of rich now that these defendants are playing the Lizzie Borden gambit, when in fact they're the reason that the case didn't move forward for three and a half years, and S.K.E. actually opposed lifting the stay, which is incredible. So they can now throw themselves on the mercy of the court and say, we're orphans. Don't make us go through this, because we've already suffered this for five years and four months and two weeks. In fact, it's the plaintiffs who are the victims here, because they weren't able to move the case forward, because in the first instance, Judge Sullivan didn't want the case. And in the second instance, Judge Welty, who famously said any amendment would be futile, untimely, delay, and prejudicial, was not going to entertain that as an option. And so we have come... Well, to be fair to the district judge, as I understand it, you didn't give the proposed amendment as required by the rules. So perhaps... I did not. Perhaps any amendment was his way of saying anything. I don't know what he meant by that, but you didn't give him a proposed amendment to focus on. I agree. I agree. And that was prior counsel and the judgment that they made, which unfortunately I have to live with. Having said that, I would point out that the court said that while we failed to adhere to rule 5.1, that wasn't the basis on which he made the dismissal. So I think you know, fairness is an elusive quality in this case. I agree. Mr. Cook, could you help me understand if there were, and you can correct me if I'm misunderstanding your opposing counsel's position, but there were multiple times when motions were filed raising the issue of the jurisdictional basis for this case and the various claims. Why is that not an adequate opportunity for you two or proceeding counsel to assess or reassess how you want to proceed with your case? I can't argue against that, Your Honor. I'm simply going to have to throw myself onto mercy. The prior counsel made the decision they made, and we have to, you know, to deal with that. Why do you say that Judge Welty didn't deny the motion for leave to amend based on the local rule? As I read his work, just to finish the thought here, he says at the outset the motion patently fails to comply with the local rule. That deficiency alone is enough to deny the motion. And then he says beyond that, any amendment would be untimely. You don't think that first paragraph is a denial based on the local rule? I think it's a recognition, but I honestly believe that his words speak for themselves, and the decision was based on his determination that any amendment would be futile and that the undue delay had inured to the disadvantage of the defendants. But in fact, if you extract out the Sullivan three and a half years, this case was barely in North Dakota for a or, you know, prejudice to the defendants applies. And the court obviously has stated it has discretion, as you mentioned, Judge Culligan, we're asking that we be given an opportunity to pursue this case. We're the victims here. The defendants actually arguing that a paper company in Peru is the real party in interest belies the plaintiffs. The other plaintiffs are the parties that lost two million dollars at their hands, at the hands of their clients, and for whom the supposed the product that was to be delivered was to be delivered to the U.S. plaintiffs in this case, not the Peruvian defendants. Very well. Thank you for your argument. Thank you for the opportunity. You're welcome. Thank you to all three counsel for your presentations today. The case is submitted and the court will file an opinion in due course.